**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **METROPOLITAN OMAHA PROPERTY OWNERS ASSOCIATION, INC., PIERCE CARPENTER, AND HILLCREST APARTMENTS** | **8:19CV431** |
| **Plaintiff,** | **MEMORANDUM AND ORDER** |
| **vs.** | |
| **THE CITY OF OMAHA, NEBRASKA,** | |
| **Defendant.** | |

This matter is before the Court on Defendant City of Omaha's Motion to Dismiss, ECF No. 9, and the Application for a Preliminary Injunction, ECF No. 12, submitted by Plaintiffs Metropolitan Omaha Property Owners Association, Inc. (MOPOA), Pierce Carpenter, and Hillcrest Apartments (Hillcrest). For the following reasons, Plaintiffs' Application for a Preliminary Injunction will be denied and the City's Motion to Dismiss will be denied as moot, subject to reassertion.

## BACKGROUND

The material facts of the case do not appear to be in dispute. The following facts are those found in the pleadings, briefs, and evidentiary submissions.

Plaintiff MOPOA is a Nebraska nonprofit corporation. MOPOA consists of approximately 1,000 individuals and entities that own and operate real property located in Omaha, Nebraska.

Plaintiff Carpenter is a member of MOPOA and owns rental property in Omaha. Carpenter "sometimes does business under the name of Hillcrest Apartments." Am. Compl. ¶ 9, ECF No. 18 at Page ID # 297.

This action arises out of an earlier lawsuit before this Court, in which MOPOA raised several issues regarding the City's housing code. The parties settled that action, and the Court adopted the terms of the settlement agreement through a consent decree. Consent Decree, *Metro. Omaha Prop. Owners Ass'n, Inc. v. City of Omaha* (*MOPOA I*), No. 8:13-cv-230-LSC-FG3 (D. Neb. Mar. 4, 2015), ECF No. 36 (incorporating the terms of the settlement agreement found at ECF No. 35-2). Under the Consent Decree, MOPOA agreed to dismiss its case, and the City agreed to amend certain sections of the Omaha Municipal Code and adopt a set of standard operating procedures which were to serve as the official policy of the City's Permits and Inspection Division.

On or about April 17, 2019, the City enacted the Rental Property Registration and Inspection Ordinance (RPRIO), to take effect January 1, 2020. Omaha, Neb., Ordinance 41,767 (to be codified at Omaha, Neb., Code §§ 48-201 to 48-209). The stated purpose of the RPRIO is to "implement uniform residential rental property registration, and a regular inspection program . . . to address the issue of substandard rental properties, promote greater compliance with health and safety standards, and preserve the quality of the city's neighborhoods and available housing." § 48-201(b). The RPRIO requires all rental dwellings in the City of Omaha and within its three-mile extraterritorial jurisdiction to be registered with the City's Permits and Inspections Division. § 48-204. There are no fees to file a registration application. § 48-205. All registered properties are subject to inspection by the City every ten years, or annually if the property has had prior violations

or was not timely registered. § 48-206. The landlord must pay an inspection fee of $125 for each decennial or annual inspection. § 48-206(g).

This action was initially brought by MOPOA on October 3, 2019, in a three-count Complaint, ECF No. 1, asking the Court to find the RPRIO unconstitutional and in violation of the Consent Decree. On November 27, 2019, the City filed a Motion to Dismiss, ECF No. 9. On November 29, 2019, MOPOA filed an Application for Preliminary Injunction, ECF No. 12. On December 15, 2019, Plaintiffs filed an Amended Complaint, ECF No. 18, joining Carpenter and Hillcrest, and Carpenter and Hillcrest filed a Notice of Joinder regarding the Application for Preliminary Injunction, ECF No. 19.

## STANDARD OF REVIEW

Courts in the Eighth Circuit apply the factors set forth in *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc), when determining whether to issue a preliminary injunction or temporary restraining order. *See, e.g.*, *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) (reviewing district court's balancing of the *Dataphase* factors). Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase*, 640 F.2d at 114. "[N]o single factor is determinative." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (quoting *Dataphase*, 640 F.2d at 113). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)).

**DISCUSSION**

Plaintiffs state two claims for relief[1] arising out of the City's enactment of the RPRIO. They generally state these claims are brought under 42 U.S.C. §§ 1983, 1985, and 3613; the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; and the Court's inherent power to enforce its own orders, judgments, and decrees. Plaintiffs assert the RPRIO is unconstitutional and constitutes a breach of the Consent Decree, and they move for preliminary and permanent injunctive relief.

## I. Preliminary Injunction

### A. Likelihood of Success on the Merits

"In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir.1995)); *see also Home Instead*, 721 F.3d at 497 ("[T]he probability of success factor is the most significant." (citing *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013))). With respect to this factor, it is not necessary for the movants to prove they are more likely than not to prevail; the movants need only show a reasonable probability of success, that is, a fair chance of prevailing on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *Dataphase*, 640 F.2d at 113. Accordingly, Plaintiffs must demonstrate they have a fair chance of prevailing on the merits of their claim that the RPRIO violates the Fourth Amendment[2] or the Consent Decree.

---

[1] The Complaint purports to state three claims for relief, but the third is a request for injunctive relief and does not state an independent cause of action.

[2] The only constitutional arguments briefed by Plaintiffs are that the RPRIO violates the Fourth Amendment and unconstitutional conditions doctrine. Although Plaintiffs' Brief in Support of Application for Preliminary Injunction, ECF No. 13, includes a footnote stating, "The RPRIO is also unconstitutional and

4

### 1. Fourth Amendment Violation

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The historical governing principle of the Fourth Amendment has been that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara v. Mun. Ct. of City & Cty. of San Francisco*, 387 U.S. 523, 528–29 (1967) (citing *Stoner v. California*, 376 U.S. 483 (1964); *United States v. Jeffers*, 342 U.S. 48 (1951); *McDonald v. United States*, 335 U.S. 451 (1948); *Agnello v. United States*, 269 U.S. 20 (1925)). Absent an opportunity for pre-compliance review there is an "intolerable risk" that searches authorized by an ordinance may exceed statutory limits or be used as a pretext for harassment. *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452–53 (2015). This prohibition against unreasonable searches and seizures extends to all governmental intrusions—criminal and civil. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312–13 (1978) ("If the government intrudes on a person's property, the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards.").

---

should be enjoined for the additional reasons described in MOPOA's Complaint," Pl.'s Br. n.1, ECF No. 13 at Page ID # 72, those issues are not briefed, and the Court will consider them waived for purposes of this Motion. NECivR 7.1(a)(1)(A).

The unconstitutional conditions doctrine[3] establishes that "the government may not deny a benefit to a person because he exercises a constitutional right." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013) (quoting *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540 (1983). Municipalities may not make landlords choose between consenting to warrantless searches or losing the ability to exercise property rights. *See Thompson v. City of Oakwood*, 307 F. Supp. 3d 761 (S.D. Ohio 2018) (finding the city violated the Fourth Amendment by requiring property owners to submit to a warrantless pre-sale inspection before receiving permission to sell property.); *Sokolov v. Vill. of Freeport*, 420 N.E. 55, 56 (N.Y. 1981) ("[T]he imposition of a penalty upon a landlord for renting his premises without first consenting to a warrantless search violates the property owner's Fourth Amendment rights.").

To show likelihood of success on their claim, Plaintiffs must show that the RPRIO is facially invalid or that it deprives them of the right to rent out property unless they consent to warrantless searches. To establish that a statute is unconstitutional on its face, a plaintiff must show that "there is no set of circumstances under which the laws would be valid." *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Plaintiffs are unable to make that showing.

Plaintiffs liken the RPRIO to the ordinances struck down in *Camara*, 387 U.S. 523; *MS Rentals*, 362 F. Supp. 3d 404; *Pund v. City of Bedford*, 339 F. Supp. 3d 701 (N.D.

---

[3] The doctrine is derived from substantive due process. Kathleen M Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1413, 1416 (1989). The Court will not address the doctrine separately, but in the context of the alleged Fourth Amendment violation. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, C.J., plurality))); *see also MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 414 (E.D. Mich. 2019) (dismissing a separate count alleging a violation of the unconstitutional conditions doctrine and addressing instead the Fourth Amendment claim).

Ohio 2018); *Thompson*, 307 F. Supp. 3d 761; *Dearmore v. City of Garland*, 400 F. Supp. 2d 894 (N.D. Tex. 2005); and *Sokolov*, 420 N.E.2d 55. The ordinance at issue in each of these cases required landlords to consent to a warrantless search or face criminal charges or loss of property rights.

The City argues these cases are distinguishable and the RPRIO is more like the ordinances upheld in *Mann v. Calumet City*, 588 F.3d 949 (7th Cir. 2009); *Tobin v. City of Peoria*, 939 F. Supp. 628 (C.D. Ill. 1996); and *Hometown Coop. Apartments v. City of Hometown*, 515 F. Supp. 502 (N.D. Ill. 1981). These cases upheld inspection ordinances that required the city to obtain consent or a warrant prior to a search.

*Camara* illustrates what the Fourth Amendment prohibits. In *Camara*, the ordinance at issue stated:

> Authorized employees of the City departments or City agencies, so far as may be necessary for the performance of their duties, shall, upon presentation of proper credentials, have the right to enter, at reasonable times, any building, structure, or premises in the City to perform any duty imposed upon them by Municipal Code.

*Camara*, 387 U.S. at 526. A landlord refused to allow an inspector access to his apartment without a warrant and was criminally charged for violating the housing code. The Supreme Court held that "appellant had a constitutional right to insist that the inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to the inspection." *Id.* at 540.

*MS Rentals* best illustrates what the Fourth Amendment requires of the City. In *MS Rentals*, the ordinance as originally written did not provide for any pre-compliance review, and searches were never performed under a warrant. *MS Rentals*, 362 F. Supp. 3d at 417. However, the court determined that "[b]ecause the ordinance ha[d] been amended to include opportunities for landlords to obtain pre-compliance reviews before

yielding to an inspection, there [was] no need to grant injunctive relief." *Id.* (citing *Students for a Conservative Am. v. Greenwood*, 378 F.3d 1129, 1130–31 (9th Cir. 2004)).

The amended code in *MS Rentals* is substantially similar to the RPRIO. The amended code in *MS Rentals* provided that if an "owner refuses to allow inspection, the inspector shall provide a Notice of Pre-Inspection Rights which shall include information that the owner is entitled to a pre-compliance review of the inspection by a neutral hearing officer . . . to determine the purpose, scope, and propriety of the inspection." *Id.* at 414. The owner is then given fourteen days from receipt of the notice to inform the hearing officer of "all the reasons why the inspection should not take place." *Id.* The city is given the opportunity to respond, and the hearing officer decides within ten days whether to issue a warrant. *Id.* This procedure "obviate[d] the need for injunctive relief." *Id.* at 419.

The RPRIO provides that "[i]t shall be unlawful for any person to offer for lease, lease, or continue to lease a rental dwelling to any other person unless the rental property containing the rental dwelling has been registered as such under this article . . . ." § 48-204(a). In order to maintain registration, a property owner must stay in "ongoing compliance with applicable requirements of this article . . . including . . . requirements that are the subject of periodic inspections . . . ." § 48-204(c). Every property registered under the RPRIO is subject to either annual or decennial inspections. § 48-206. Like the amended ordinance in *MS Rentals*, the RPRIO requires fourteen-day written notice of inspection. The notice includes a form for the tenant to consent to entry of the dwelling. Should the tenant or the owner refuse consent, the inspecting official must obtain a warrant or other court order. Finally, the RPRIO explicitly states:

> The city shall not penalize any tenant for a refusal of inspection. The city shall not penalize the property owner or property manager if the tenant

refuses consent.  In the event that an inspection is not conducted because a warrant or other court order cannot be obtained, the owner, manager, and tenant of the rental property shall not be penalized . . . .

§ 48-206(c).

This provision allows for landlords to refuse to consent to inspections under the RPRIO and demand that the City obtain a warrant.  Landlords are not subject to criminal liability should they refuse to consent.  Nor are they prohibited from renting their property to others for refusing to consent.  Therefore, Plaintiffs have not shown a likelihood of success on the merits regarding the alleged Fourth Amendment violation.

### 2. Breach of Consent Decree

Plaintiffs allege that the RPRIO violates the Consent Decree entered into by the parties in *MOPOA I*.  Specifically, Plaintiffs argue that the Consent Decree requires all inspections conducted under Chapter 48 of the Omaha Municipal Code to comply with section 48-34 and that inspections under the RPRIO do not.

Section 48-34 of the Omaha Municipal Code states:

(a) The code official is authorized to enter the exterior areas of any property in the city or its extraterritorial jurisdiction at reasonable times for purposes of inspection under this chapter, subject to constitutional restrictions on unreasonable searches and seizures.

(b) The code official may enter the interior common area of a multi-unit structure for purposes of knocking on or otherwise accessing the exterior of the door of a unit contained therein.

(c) The code official may enter the interior of a structure or unit thereof for purposes of inspection under this chapter at any reasonable time, provided, that consent is obtained from the owner or occupant, or there is an emergency involving imminent risk to life or safety, or a search warrant, inspection warrant, or other authorizing court order is obtained. If the owner has registered pursuant to section 48-33(b), the code official shall comply with that section prior to inspection. If entry is refused or not obtained, the code official is authorized to pursue recourse as provided by law.

Omaha, Neb., Code § 48-34.

The RPRIO does not violate these terms on its face. Section 48-206(c) requires that the code official obtain consent or a warrant in order to search rental property as required by section 48-34(c). Therefore, Plaintiffs are not likely to succeed on the breach-of-consent-decree claim. Accordingly, the likelihood-of-success factor does not favor issuance of a preliminary injunction.

*B. Threat of Irreparable Harm*

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Ents., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). Generally, "when an alleged deprivation of constitutional rights is involved, no further showing of irreparable injury is necessary." *Saint v. Neb. Sch. Activities Ass'n*, 684 F. Supp. 626, 628 (D. Neb. 1988) (citing *Planned Parenthood v. Citizens for Cmty. Action*, 558 F.2d 861 (8th Cir. 1977)). However, the movant must "demonstrate that irreparable [harm] is *likely* in the absence of an injunction." *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 992 (8th Cir. 2011) (emphasis in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

Plaintiffs have not shown that they are likely to be deprived of their Fourth Amendment rights. They have also not demonstrated that they are likely to be deprived of any rights under the Consent Decree. Even if they had, they do not explain why any alleged violation of the Consent Decree could not be compensated with money damages. Accordingly, this factor does not favor issuance of a preliminary injunction.

*C. Balance of the Harms*

The primary question when issuing a preliminary injunction is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase,* 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994).

Plaintiffs have not demonstrated that they will be harmed without the issuance of a preliminary injunction. The City, however, would be enjoined from implementing an ordinance intended to protect citizens from substandard living conditions. The balance-of-harms factor does not weigh in favor of issuance of a preliminary injunction.

*D. Public Interest*

"There is unanimous agreement among those most familiar with this field that the only effective way to seek universal compliance with the minimum standards required by municipal codes is through routine periodic inspections of all structures." *Camara*, 387 U.S. at 523 (citing H.N. Osgood & A.H. Zwerner, *Rehabilitation and Conservation*, 25 Law & Contemp. Probs. 705, 718 & n.43 (1960); Bernard Schwartz, *Crucial Areas in Administrative Law*, 34 Geo. Wash. L. Rev 401, 423 & n.93 (1965); John C. Fossum, Comment, *Rent Withholding and the Improvement of Substandard Housing*, 53 Calif. L. Rev. 304, 316–17 (1965); Richard E. Carlton et al., Note, *Enforcement of Municipal Housing Codes*, 78 Harv. L. Rev. 801, 807, 851 (1965); Note, *Municipal Housing Codes*, 69 Harv. L. Rev. 1115, 1124–25 (1956)). In order to prevent fire, epidemic, unsightly conditions, and other blights on society, "numerous courts have upheld the police power of municipalities to impose and enforce such minimum standards . . . ." *Camara*, 387

U.S. at 535. Thus, the public interest favors ensuring that property owners comply with municipal housing standards. The public interest weighs against issuance of a preliminary injunction.

The balance of the *Dataphase* factors does not favor issuance of a preliminary injunction. Therefore, the Application for Preliminary Injunction is denied.

## II.     Motion to Dismiss

Due to the filing of the Amended Complaint, ECF No. 18, the Motion to Dismiss, ECF No. 9, is denied as moot. The City may reassert its Motion to address the Amended Complaint.

Accordingly,

IT IS ORDERED:

1.  Plaintiffs' Application for a Preliminary Injunction, ECF No. 12, is denied; and

2.  Defendant's Motion to Dismiss, ECF No. 9, is denied as moot, subject to reassertion.

Dated this 23rd day of December, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge